And we'll call our last case of this morning, number 21-1274, Perez v. Attorney General, Messrs. DePrince and Stolzer. Your Honors, I'd like to reserve three minutes for rebuttal. You certainly may. Just note your name for the record, please. Yes, absolutely. Thank you, Your Honors. And may it please the Court, my name is Mike DePrince and I represent Petitioner Juan Perez. You're welcome. The question in this case is whether Congress intended criminal statutes that cover ordinary assault of a minor for a non-sexual purpose to be removable as aggravated felony sexual abuse of a minor. Tell me why Rodriguez-Rodriguez doesn't get Chevron deference. Rodriguez-Rodriguez does not get Chevron deference here because the BIA did not faithfully invoke it in order to resolve the issue before this Court now, which is whether the federal generic definition requires an intent associated with sexual gratification. How does this case differ from Cabeda? Well, the issue in Cabeda was whether a statute that criminalized reckless contact met the federal generic definition. This is something different. Where Cabeda was a deviant sexual intercourse statute, this is more of a physical contact statute that criminalizes abusive contact. Right, in both instances going under the banner of sexual abuse of a minor. Right? We were confronted with that in Cabeda. Speaking of spirited, we had a spirited exchange with our brilliant colleague, Judge Krause, about whether Rodriguez-Rodriguez still required our deference and Restrepo still controlled after Escobar-Quintana and the majority opinion in that case said it still controls. So if it still controls and Rodriguez-Rodriguez sets the bar and Restrepo says that we defer to that, if that's where we come out, do you lose? I don't think so, Your Honor, because Restrepo said that we will defer to the BIA's reasonable use of 18 U.S.C. 3509 as a useful guide to identify the meets and bounds of what is sexual abuse of a minor. The BIA here did not purport to use 18 U.S.C. 3509 and the government does not argue otherwise. They simply say because the BIA once in Rodriguez-Rodriguez used it, we should use it here and, of course, have our deference to a framework not implicated here. Doesn't the very first sentence of the BIA's analysis give you the definition of sexual abuse of a minor that the board adopted in Rodriguez-Rodriguez? The board states – so the issue before the BIA was Cabeda had not yet been decided and Escobar-Quintana had. So the question was, does Escobar-Quintana undercut the decisional basis of Rodriguez-Rodriguez? Cabeda came down before the case was decided and the BIA says in that paragraph, 18 U.S.C. 3509 is a useful guide and that the Third Circuit recognizes it's still a useful guide, but then it didn't apply in any faithful manner after that. 18 U.S.C. 3509 does not make any appearance in the rest of the decision. And with regard to this issue of specific intent, it rests its argument on four circuit courts and dictionary definitions. We have to have the federal generic definition, right? That's correct. We've got to have that to play this crazy categorical approach game. Correct, Your Honor. Okay. So we appear to have planted our flag in Restrepo and to have said, again, in Cabeda, it's still there. So even if the BIA didn't go through a 3509 analysis, I'm still struggling, Mr. DePrince, to find where the generic flag is if it's not right where Restrepo said it is and right where Cabeda said it still is. And if it's there, I'm wondering how you win. And when I asked you that before, you said, well, because they really don't apply 3509. But if we accept that 3509 is the basis on which we make a determination what the generic offense is, help me out of this loop. If you're there, how are you not there? If it's 3509, like Rodriguez, Rodriguez, Restrepo, and Cabeda say, how do you not have a problem? Yes, Your Honor. So two points. First, an agency action must be measured by what it did, not what it could have done. So we can't just assume that the BIA would have justified a particular interpretation in a certain way and then taken acts in accordance with that assumed rationale. Wait a second. Chenery is dealing with an instance that wasn't dealing with a discrete question of law. Chenery was dealing with discretionary decision-making. Here, you're talking about a question, a very discrete, specific question of law. What's the generic definition of sexual abuse of a minor? Is that really Chenery land? If we're in – I do not think that this decision warrants Chevron deference. If we're in Chevron Step 2 deference, the basis of statutory interpretation invoked to interpret a portion of a federal generic definition, we can't assume that the BIA would have offered certain policy rationales and invoked certain bases to justify a certain outcome when, in fact, it didn't do that here. It could have invoked 18 U.S.C. 3509 easily if it wanted to to address this specific issue, but it did not. Is Rodriguez-Rodriguez a precedential BIA decision? It is, Your Honor. And does that bind the BIA? It binds the BIA, but the BIA applied Rodriguez-Rodriguez in no faithful manner here. So where it's not consistent with its own prior precedent and invokes other bases to address a specific issue before it, the BIA is outside its own territory at that juncture, and this is an unpublished decision below. And also, neither the BIA nor this Court has purported that 13509 alone is the guide to determine what's in and what's out of the generic definition. As the BIA recognized, Restrepo recognized it as a reference point, to quote the BIA. We have said in Kadapan it's a reference point. We have also said in Restrepo it is not a definitive definition. It is a guide. So neither the BIA nor the Third Circuit has said it is the lodestar in all cases forever. Well, is it the primary guide to what we're doing? To the extent it is a primary guide, there are other guides to. But we've taken it as the primary guide. It seems like your argument is you have to look at what the BIA did here, which we certainly agree we have to look at what the BIA did here. But the question of Chevron deference is do we defer to a precedential decision, not what might have happened in this instance, but do we defer to the BIA's stated position on what is the generic definition? And that seems to me we answered, and answered twice, and answered the last time quite recently. If I may, Your Honor, take a step back. The question of before we get to Chevron deference is whether we can discern congressional intent. And as Judge Roth recently noted in De Silva, statutory ambiguity must be assessed through an appropriately tailored lens with respect to the specific issue presented. So if we can use normal tools of statutory interpretation to resolve the specific issue of intent, we aren't even talking about Chevron. That's Judge Krause's very elegant position, which was the minority, which did not carry the day. Correct, Your Honor. I mean, also, as noted in Cabeda, that Chevron deference is not necessary in one particular context does not sufficiently undercut the decisional basis of Restrepo when saying that Esquivel-Quintana finding lack of ambiguity with regard to a specific element. But here, when you say we're in one particular setting, we are in the setting of what is the generic definition of sexual abuse of a minor. That is the Cabeda decision. Maybe I'm not being helpful to you in drawing out your position, but I'm still having some difficulty understanding how Cabeda doesn't answer the question of what is the generic definition. And if it does answer the question of what is the generic definition, you know, well, let me put it this way. Assume I thought it did do that. It did not. Assume I thought that Cabeda set the generic definition of what is sexual abuse of a minor. How would you argue your case at that point? I do not think that Cabeda set out an exhaustive definition, presuming that it did. Yeah, there you go. Presume that it did and answer the question, okay? Then we can follow the thoughtful analysis that the majority took in Cabeda, which was, let's look to the INA's text. Let's look to the statutory context. Let's look to federal statutes. It also noted that in Esquivel-Quintana properly looked to state statutes, model penal code. So if we are using 3509 as a guide, a primary guide, what have you, there are still other guides that are out there, and there's no sound textual basis or canon of statutory construction to resolve an ambiguity by pointing to one federal statute that Congress did not cross-reference and say this is the lodestar forever. Is the reason you say Cabeda was so thoughtfully done because Judge George wrote it? It's being very diplomatic. But I do think that Cabeda does properly go through the analysis. It didn't look to 2243, another federal statute, and say, this is it, we have our answer. It looked holistically. It looked to the INA and says, where is sexual abuse of a minor situated? It's next to murder. It's next to rape. These are heinous crimes. What are the consequences? It's labeled an aggravated felony, and you're removed from the country. That's an inherent seriousness. And the categorical – It's kind of inherently serious about molesting an 8-year-old, isn't there? Well, it certainly may be sufficient for conviction under the statute, but it's not necessary for conviction. And what matters under the categorical approach is whether the baseline least of the acts criminalized under the statute equals the federal definition of sexual abuse of a minor. The government's position is we have contact. Contact is dispositive. We presume that it is sexual, and therefore it is sexual abuse of a minor. And there's now no way to police the line between sexual abuse and ordinary assault or child abuse, which is another basis to be removed from the country. DHS very well could have charged these crimes that lack the specific intent element as child abuse. You also have crimes of violence, crimes involving moral turpitude. However, DHS's position is we're going to push as much conduct as humanly possible. Yeah, so you're on to the intended result piece of it at this point. And how are we to read the statute in a way that doesn't indicate that there was an intended result that involves sexual gratification, even if humiliation is some other piece floating around in there? I think of this as the dazed and confused paddling argument, right, that there's just some humiliation factor in here. It's really not sexually motivated. But the language that's used in 3509A9 does talk about humiliation and harassment and degrading behavior. It does look like if we look to those things as a guide, it does match up. What's your answer to that? Well, first, we look to the least of the acts criminalized. And when you have one element with alternative means, you have to consider all those elements. So, yes, you point to humiliation, but abuse is also a specific intent listed. So we have to consider that the lowest of the intent was simply to abuse. And I find it hard to say that a paddling, for example, which the government does not dispute. 3509A9 says with an intent, quote, an intent to abuse, unquote. So it covers that, too. If 3509 is the exclusive definition in all cases moving forward, then there's a match. But that's not a textual basis or can of statutory construction to say we don't consider other data points. And this Court in the VA has never said it is the exclusive guide, especially where Congress could have cross-referenced it but did not. And where Congress did not cross-reference it, we presume sexual abuse of minor contains this ordinary common-law meaning. All right. We'll get you back on rebuttal. Thank you, Your Honors. Mr. Stolzer. Good morning, Your Honors. Counsel. And may it please the Court, Rob Stolzer on behalf of the AG. Your Honors, I think we can take as our starting point Guijalva-Martinez, the most recent of the sexual abuse of a minor cases that the Court has considered. And when they laid out their two requirements to be a sexual abuse of a minor, requirements that the defendant knowingly engaged in an act that is criminal sexual contact, and that they engage in such an act with a person who's of the age the statute covers, in other words, for our purposes, a minor. I don't think the minor part is in contention here. I think here basically we're talking about what did a sexual contact occur here, which is the second element of the D.C. statute here, the criminal statute. And it happily, they define it for us. And they define it for us in such a way that it almost perfectly matches the federal definition of sexual, or at least one of the federal definitions of sexual contact to be the touching of the victim over or under their clothing on one of these situations, which is a perfect match. So does 3509A9 and the D.C. statute, does that match end it, get over? I think that ends the conversation for this case simply because our job here is to find simply whether all of the conduct under the D.C. statute falls under the federal term sexual abuse of a minor. And so because the D.C. statute happily here gives us its elements, and the D.C. Court of Appeals has very clearly told us, okay, these are the things you have to prove, we don't have to worry so much about whether it's a wobbler statute or something where it's unclear, is it a means, is it an element. Here the D.C. court has told us these are elements that have to be proven, and one of those is the sexual contact. So then when we turn to federal law and say, okay, what sorts of things are we looking for for the term sexual abuse in sexual abuse of a minor, we can go to 3508, we can go to 3509, which happily has the exact same statutory term, sexual contact, and it describes the exact same conduct, the touching of the intimate body parts for these reasons. Well, why don't you answer, if you would, Mr. DePrince's argument that even in Cabeda we didn't say that 3509 is the be-all and end-all of 3508, that you look to other things, and in fact, in this case, the BIA didn't really confine itself, it didn't do that, so we shouldn't do that. I mean, I'm not doing justice to his more articulate placing of the argument, but go ahead and meet that argument, take it on. Of course, Your Honor. Well, in matter of Rodriguez-Rodriguez, the board didn't purport to just define the be-all, end-all of sexual abuse of a minor. They said that at a very minimum, these are our guidelines. And then, of course, this court picked up the baton in Restrepo and Cabeda and then Grijalva's Martinez, explaining, okay, at least these state statutes fall within the larger umbrella of sexual abuse of a minor without fully defining or fleshing that out. And by the way, the Supreme Court took the same tactic in Esquivel and Centeno, right? They didn't say, in fact, they explicitly said, look, we're not defining sexual abuse of a minor, we're simply saying you've got at least, we're talking about people under the age of 16, and then they left it at that. So we don't need to go further than to simply say all of the conduct of this particular conviction, D.C. Code 22-3009, falls within the federal term sexual abuse of a minor. Just backing up for a second. How do you reconcile giving Chevron deference to the definition of sexual abuse of a minor in Rodriguez-Rodriguez with the statutory interpretation techniques used to interpret this very same phrase in Esquivel, Quintana, and Cabeda? I'm aware that the Supreme Court didn't reference Chevron in Esquivel-Quintana, but as this Court explained in Cabeda, I don't think that that displaces the Court's jurisprudence in terms of Chevron deference, at least not without an explicit command that it does. I wanted to mention, Your Honors, briefly the topic of knowing conduct, because this Court in Cabeda said the conduct had to be knowing. Here, I just want to point to the state statute where this can also be used. Let me just continue on that same theme for just a second. So if a certain Chevron deference did not apply, how do you determine the meaning of sexual abuse of a minor? We would look to, I would say, I would start with federal law to see if we have other clues in the statutes. 3509, 3508 would certainly be a place to start, and of course that's the place the Board started, but it had to define it back in 1999. 2246, which is sexual abuse of a ward, I think, has a similar approach. And those statutes use similar language, broad language. I think 3508 refers to molestation, sexual exploitation, sexual explicit conduct, things like that that give us a contextual clue, what could Congress have meant when it said the words sexual abuse of a minor? Certainly I don't think that's a narrow phrase. In 1996, when Congress was expanding the aggravated felony definitions, they weren't trying to say, you know, rape, murder, and sexual abuse of a minor, but only those which are conducted for the purposes of sexual gratification where an affirmative defense of mistake of age is available. They didn't say that, and it would be unreasonable to expect that that's what they meant when they said the phrase sexual abuse of a minor. That's my final point. We get to the end of this, and Petitioner has thrown up two roadblocks, at least in briefing, saying to be sexual abuse of a minor, there must be some purpose of sexual gratification. That's not what Congress said, and there are no textual clues in the rest of the statutes to suggest that that's what Congress meant, and there's no, of course, precedent suggesting that's what Congress meant either. And the same is true when it comes to mistake of age. Well, this part has already been very clear that the sexual abuse of a minor does not include a requirement that the defense that you put yourself into the dates maybe I should make myself clear. I just assume people are familiar with the movie Days to Confuse where there's hazing paddling going on throughout it. It's a high school hazing ritual. Is it really the position of the government that that kind of, you know, that's set back in the 70s, so hopefully we're not having quite the same thing going on all the time. But is it really the idea that sort of hazing ritual, contact with the buttocks intended to humiliate, that that's sexual abuse, sexual abuse of a minor, and that every senior high school clown who whacked a freshman on the butt with a paddle is guilty or would be guilty of a sexual abuse of a minor? If they were a legal immigrant, they would be subject to removal for an aggravated felony? Is that where your analysis takes us? It does, Your Honor. And let me explain why. Wow. Because we're talking about not just merely abuse, as my brother counsel suggested, that, oh, this is just simple assault. It's not simple assault. It's assault of a minor on a particular private part of the body, right? We generally have an idea about private parts, right? We don't touch private parts of kids. We don't do that. And so even in the context of abuse, humiliation, harassment, degradation, things short of sexual gratification, if it's on one of these prohibited body parts, one of these parts of the body, we still tend to think of that as sexual. Even in the case of, for example, high school hazing. Even if it has zero to do with sex? Well, it's a sexual body part, I think, is the point that I'm making. And I think it's the point, by the way, that Congress made when it defined sexual contact in 3509. And the same thing did the D.C. Code. They also thought, well, I mean, that was Congress, too. But other states also have similar portions. But I think that is a consequence, Your Honor, of the fact that the particular body parts that are being touched. It's not just simple assault. It's assault or humiliation or degradation of these particular parts of the body with this intent. So the word better get out. Beat people with paddles on the back. Because if you get too low, you're a sexual abuser. Yes, Your Honor. Yeah, okay. Your Honor, I won't belabor the point. We simply urge the Court to find that there's a categorical match here between the state law and the Federal term sexual abuse of minor. If there are no questions. No further questions. Thank you very much for your time. Mr. Prince. Thank you, Your Honors. If 3509 is only a guide, there must be circumstances where it's not appropriate. The government hasn't actually said what sexual means yet. So there needs to be a way to police the line between sexual abuse of a minor under the INA and child abuse under the INA and in general. And the way to achieve that is to give the word sexual independent meaning beyond mere contact as four circuits have unambiguously held. At page 15. I just heard the government define that. They said there are certain body parts you can't touch. Touch them. You fit within the statute. That is sexual abuse. Done. So that's the government's position. You want to address it? I think it's a tautology, Your Honor. I think they define sexual abuse as sexual abuse or sexual harm as sexual harm. It doesn't actually tell us what it is beyond there's contact and a body part. It's contact with a specific range of body parts. That's what I understand to be saying. That there's no such thing as touching the buttocks without it being sexual abuse. That is definitionally. Now, maybe you'd say that's a tautology, but they're saying, no, it's not just all touching. It's not all assault. It depends on where you're doing the offensive touching. That's right. I think it's incorrect to say that contact is ipso facto sexual and then sexual abuse of a minor when a buttocks is involved. Then there's no line between. Why isn't it? That's what you've got to answer. They're saying it is. Congress said it is. And that's good enough. They're allowed to define it that way. Well, Congress did not define it that way explicitly. But using tools of statutory interpretation, as four circuits have held, there needs to be some weight given to the word sexual in the phrase. And sexual refers to libidinal gratification, lasciviousness, lewdness, some intent associated with libidinal gratification. And that's how we police the line between sexual abuse of a minor and ordinary assaults. Otherwise, the word sexual is surplusage. Well, does that make the words abuse and humiliation surplusage too? Or are you saying that in all instances you would have to read this libidinous piece into it? You couldn't just be whacking somebody to humiliate them. You'd have to be whacking them to humiliate them in a way that gratified the libidinous impulses of the whacker. Is that it? And the criminal statutes of 33 states has held that that is exactly how we define it. The fact that 17 did not is of no occasion. And also, if I may make one final note, the BIA did not have the opportunity to address this issue in Rodriguez-Rodriguez because it could not. The Rodriguez-Rodriguez panel held that contact is not a limiting factor because abuse means physical or mental maltreatment, and the common usage of the term therefore means maltreatment broadly. The court held that the indecent exposure statute in Rodriguez-Rodriguez met this definition precisely because of the, quote, high degree of mental culpability, that the actor must have acted both with the knowledge that he is exposing himself to a child and the intent to arouse. And that is precisely the mens rea that supported Rodriguez-Rodriguez's conclusion. Thank you very much. Thank you to both counsels. Did Fraudman Pepper take this case, Pro Bono? Yes. Thank you very much for excellent work from you and those within your firm. Thank you, Your Honors. Appreciate it. Thank you both for being with us today.